1
2
3
4
5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

6
7   MICHAEL NOEL,                          )   No. 1:15-CV-03137-LRS
                                           )
8              Plaintiff,                   )   **ORDER GRANTING**
                                           )   **PLAINTIFF'S MOTION FOR**
9       vs.                                 )   **SUMMARY JUDGMENT,**
                                           )   *INTER ALIA*
10  CAROLYN W. COLVIN,                     )
    Acting Commissioner of Social          )
11  Security,                              )
                                           )
12             Defendant.                   )
    _____)

13
14   **BEFORE THE COURT** are the Plaintiff's Motion For Summary Judgment
15   (ECF No. 15 and the Defendant's Motion For Summary Judgment (ECF No. 17).

16
17                              **JURISDICTION**
18       Michael Noel, Plaintiff, applied for Title II Disability Insurance benefits (DIB)
19   and Title XVI Supplemental Security Income benefits (SSI) on August 18, 2011. The
20   applications were denied initially and on reconsideration.  Plaintiff timely requested
21   a hearing which was held on October 30, 2013, before Administrative Law Judge
22   (ALJ) Larry Kennedy.  Plaintiff testified at the hearing, as did Vocational Expert
23   (VE) Kimberly Mullinax .  On November 1, 2013, a supplemental hearing was held
24   at which VE Mullinax testified.  On January 22, 2014, the ALJ issued a decision
25   finding the Plaintiff not disabled.  The Appeals Council denied a request for review
26   of the ALJ's decision, making that decision the Commissioner's final decision subject
27   to judicial review.  The Commissioner's final decision is appealable to district court
28   pursuant to 42 U.S.C. §405(g) and §1383(c)(3).

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 1**

**STATEMENT OF FACTS**

The facts have been presented in the administrative transcript, the ALJ's decision, the Plaintiff's and Defendant's briefs, and will only be summarized here. At the time of the administrative hearing, Plaintiff was 55 years old.  He has past relevant work experience as a supervisor abbatoir, tractor trailer truck driver, production supervisor (agriculture), food processing plant manager, landscape laborer and truck driver.  Plaintiff alleges disability since October 6, 2010, on which date he was 52 years old.  His date last insured for Title II benefits was March 31, 2016.

**STANDARD OF REVIEW**

"The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence...." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983).  Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

It is the role of the trier of fact, not this court to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 2**

F.2d 577, 579 (9th Cir. 1984).

A decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).

## ISSUES

Plaintiff argues the ALJ  erred in:  1) improperly discounting Plaintiff's credibility; and 2) improperly weighing the medical evidence resulting in the ALJ failing to include Plaintiff's migraine headaches in the ALJ's Residual Functional Capacity (RFC) determination and not presenting that limitation to the VE in hypothetical questioning.

## DISCUSSION
**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work but cannot, considering her age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  *Id*.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520 and 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987).  Step one determines

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 3**

if she is engaged in substantial gainful activities.  If she is, benefits are denied.  20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i).  If she is not, the decision-maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii).  If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work she has performed in the past.  If the claimant is able to perform her previous work, she is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv).  If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971).  The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation.  The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ORDER GRANTING PLAINTIFF'S**

**MOTION FOR SUMMARY JUDGMENT- 4**

**ALJ'S FINDINGS**

The ALJ found the following: 1) Plaintiff has "severe" medical impairments, those being: high frequency hearing loss on the right; acromioclavicular (AC) joint degenerative changes of the right shoulder; cervical and lumbar spine degenerative disc disease; vestibular disorder; cognitive disorder secondary to a traumatic brain injury; adjustment disorder with mixed anxiety and depressed mood, posttraumatic features; and pain disorder; 2) Plaintiff's impairments do not meet or equal any of the impairments listed in 20 C.F.R. § 404 Subpart P, App. 1; 3) Plaintiff has the residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except that he can perform no repetitive work above shoulder level and no lifting above shoulder height of more than 10 pounds with the right upper extremity, plus he has a variety of physical and mental nonexertional limitations detailed in the ALJ's decision (AR at pp. 29-30) which allow him to perform simple, routine tasks and follow short, simple instructions; do work that needs little or no judgment and allows the performance of simple duties that can be learned on the job in a short period of time; and allows him to maintain attention and concentration, persistence and pace in an ordinary work setting on a regular and continuing basis within customary tolerances of employers' rule regarding sick leave and absence; 4) Plaintiff's RFC does not allow him to perform his past relevant work, but (5) it does allow him to perform other jobs existing in significant numbers in the national economy as identified by the VE including vehicle cleaner, dining room attendant, industrial cleaner, hand packager, cleaner/housekeeper, mail clerk and counter clerk. Accordingly, the ALJ concluded the Plaintiff is not disabled.

**MEDICAL OPINIONS**

Plaintiff was involved in a motor vehicle accident on October 6, 2010 which resulted in him suffering a traumatic brain injury. This occurred while Plaintiff was

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 5**

working as a truck driver.  As the ALJ noted in his decision, the Plaintiff applied for unemployment compensation and received benefits from the second quarter of 2011 to the third quarter of 2012.  (AR at p. 31).  At the hearing, Plaintiff explained that while receiving unemployment, he was looking for "desk-type work."  (AR at p. 70).  According to Plaintiff, Work Source knew what his limitations were physically and "mentally," he would tell them he was "very sensitive to bright lights" and he would "get a lot of headaches."  (AR at p. 71).  At the time of the hearing, Plaintiff noted that he was being treated by Yakima Worker Care for migraine headaches and depression.  (AR at p. 75).  The ALJ asked Plaintiff about a note from Advanced Registered Nurse Practitioner (ARNP) Cary Cowin at Yakima Worker Care indicating "employability, modified duty" with regard to Plaintiff and whether that meant the Plaintiff could do some work.  (AR at p. 76).  Plaintiff responded that he could not do any physical work and that if he could do any work at all, it would  be "more along the lines of paperwork" and something that could accommodate "my headaches and my vertigo and my ringing ears and such . . . ."  (AR at p. 76).

The ALJ asked Plaintiff about him renewing his Commercial Driver's License (CDL) in April 2012, and whether that meant Plaintiff's condition had improved at that time.  (AR at pp. 76-77).  Plaintiff responded "no," asserted he had been getting "progressively worse" since the accident, and had just received his first treatment "last week," with all his previous medical appointments having been independent medical examinations (IMEs) for workers' compensation purposes.  (AR at p. 77).  Plaintiff explained that he got the CDL because he had a chance to drive a truck and thought he would give it a try and said he realized he could not do it anymore.  (AR at p. 77).

According to Plaintiff, after his accident he had migraines from two to four times a week, but since he  had been put on medication approximately two months ago, it was more like two times a week and they were seemingly not as severe.  (AR

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 6**

at p. 78). Plaintiff testified the headaches require him to lie down and be still. (AR at pp. 78-80). Plaintiff also testified that he cannot stay focused. (AR at p. 80). Asked whether he could use a computer and multitask, Plaintiff responded that he could do periods of such work, but would not be able to sustain it, "certainly [not] with a headache," and even if he would be able to do it today, there would be no guarantee he could do it the following morning. (AR at pp. 80-81). Plaintiff testified reading is problematic for him because of headaches and that comprehension is also an issue. (AR at p. 88).

It is apparent the ALJ found the Plaintiff not credible regarding the alleged occurrence and severity of his migraine headaches and the need to lie down. This alleged limitation was not included in the ALJ's RFC and was not presented to the VE in hypothetical questioning. The ALJ found the longitudinal clinical evidence was consistent with the RFC found by him.

Plaintiff was examined at Central Washington Occupational Medicine on October 20, 2010, 14 days after the accident. One of the problems Plaintiff reported was a headache that began on the date of the accident, and the other problem was dizziness which began seven days after the accident. (AR at p. 495). During a recheck visit on October 26, 2010, Plaintiff reported intermittent headaches which lasted one to three hours. (AR at p. 506). He was given a "modified duty release to work, with limited hours and largely sedentary." (AR at p. 506). During a December 14, 2010 physical therapy appointment, Plaintiff reported daily headaches with vomiting, and that the headaches started in the base of his head and moved to his forehead like tension headaches. (AR at p. 518). On January 11, 2011, Plaintiff had an IME by Medical Consultants Network, Inc.. During this examination, Plaintiff reported having headaches about six to eight times a week, lasting two to three hours at a time. (AR at p. 523)

///

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 7**

In his decision, the ALJ noted that on February 2011, Central Washington Occupational Medicine released Plaintiff to "full duty." (AR at p. 33 and 542). This was done in accord with a panel IME conducted on January 11, 2011, which concluded there was no objective basis for restricting the Plaintiff from returning to full employment, more specifically the job of his injury. (AR at p. 542). Obviously, however, the ALJ concluded Plaintiff is unable to return to "the job of his injury." At his February 2011 recheck visit with Central Washington Occupational Medicine, Plaintiff reported having headaches that occur mid-day and cause him to become nauseated and sometimes to vomit. (AR at p. 542). The IME panel considered that a "subjective complaint." (AR at p. 542).

In July 2011, Plaintiff underwent an IME by S. Daniel Seltzer, M.D.. Plaintiff reported having "chronic headaches which occur . . . multiple times per week." (AR at p. 437). Dr. Seltzer indicated the headaches were either secondary to cervicogenic complaints or secondary to closed head injury and that these should be evaluated by a neuropsychologist. (AR at p. 446).

Plaintiff was seen by Jane Kucera Thompson, Ph.D., for a neuropsychological examination on September 6, 2011. Dr. Thompson wrote as follows in her report dated September 30, 2011:

> This case is complicated by a couple of factors, a major one being that Mr. Noel did not receive appropriate and necessary diagnostic and rehabilitative therapies after his motor vehicle accident. Thus, in my opinion, he has not reached maximum medical improvement and has the potential to function a lot better in the future if he does receive appropriate therapies. For this reason, I cannot estimate what his eventual ability to work might be. . . . A second factor complicating this case is that Mr. Noel clearly engaged in some symptom magnification behaviors during the evaluation, although he did produce a profile of neuropsychological test results consistent with the known facts of the mechanism of injury. Thus, while I believe he has genuine cognitive and physical limitations, the true extent of his limitations is uncertain.
>
> Currently, Mr. Noel is very limited by slow cognitive processing and severe headaches that are worsened when he is trying to read or use a computer. He is having trouble with glare and night

**ORDER GRANTING PLAINTIFF'S**

**MOTION FOR SUMMARY JUDGMENT- 8**

1
2
3
4
5
6
7

vision when trying to drive at night. He also has vestibular (balance) deficit that makes it unsafe for him to work on ladders or any high places. He is also having problems with various aspects of attentional functioning, including sustained attention to task, self-monitoring, and short attention span. In addition, he is having trouble with some aspects of learning and memory. Finally, he is struggling with depression and anxiety at this time, including some aspects of a Posttraumatic Stress disorder. For these reasons, I feel it is unlikely that he could work productively as he would have difficulty focusing consistently on any task and seeing it to completion. Nor could he return to more physical work akin to driving trucks due to his physical injuries and vestibular disorder.

8    (AR at pp. 574-75).

9    Later in her report, Dr. Thompson elaborated upon Plaintiff's "symptom

10   magnification:"

11
12
13
14
15
16

Mr. Noel's tendency to engage in symptom magnification or outright malingering was assessed using three formal tests of effort. Mr. Noel failed the first effort test he was given, indicating that he was giving poor effort at the outset of the examination. However, he passed two formal effort tests given later, as well as the informal internal indicators of effort. Therefore, his effort is seen as being variable during this evaluation. Because rapport was good but effort was variable, the following test results may somewhat underestimate his level of cognitive functioning at this time.

16   (AR at p. 589).

17
18   Phyllis Sanchez, Ph.D., conducted a neuropsychological evaluation of the

19   Plaintiff on December 15, 2011. She felt her testing did not clearly resolve the

20   Plaintiff's current cognitive functioning as he failed in whole or in part the four tests

21   she administered to him, and failed one of the three tests administered by Dr.

22   Thompson. (AR at p. 711). Dr. Sanchez thought Plaintiff was not inclined to fully

23   reveal his current cognitive abilities, that no Axis I diagnosis applied[1] and that

24   malingering could not be ruled out. (AR at p. 711). She thought it likely that

25
26   [1] Per the American Psychiatric Association's (APA's) Diagnostic and

27   Statistical Manual of Mental Disorder (DSM-IV-TR)(4th ed. 2000), Axis I is the

28   top-level diagnosis representing acute symptoms that need treatment.

**ORDER GRANTING PLAINTIFF'S**

**MOTION FOR SUMMARY JUDGMENT- 9**

Plaintiff was cognitively functioning as well as he ever had.  (AR at p. 711).

Philip D. Rodenberger, M.D., conducted a psychiatric evaluation of the Plaintiff on January 5, 2012.  He diagnosed Post-Traumatic Stress Disorder and indicated Plaintiff had a symptom profile compatible with post-concussive disorder with physical, cognitive, and emotional/behavioral manifestations. He thought at that time, Plaintiff was not capable of any gainful employment and recommended occupational rehabilitative services.  (AR at p. 711).

Dr. Rodenberger was asked by the Department of Labor and Industries (L & I) to reconsider his report in light of the evaluation performed by Dr. Sanchez.  On February 22, 2012, Dr. Rodenberger wrote:

> I do not believe that the claimant is malingering, if malingering implies that he is consciously attempting to deceive by purpose-fully reporting symptoms that he does not indeed experience. I could support some sort of somatoform disorder characterized by a mixture of physical, cognitive, and emotional behavioral symptoms.  These symptoms would then be deemed to be an unconscious conversion of a stress-induced condition into symptoms that take the form of a physical, cognitive, or psychiatric disorder.  I consider this kind of disorder to be no less "real" than if he had a more clearly diagnosable condition. I believe that he is truly impaired from a psychiatric standpoint and in need of further evaluation and treatment, as I consider this condition to be not fixed or stable.

(AR at pp. 784-85).

In a March 2012 addendum to her December 2011 evaluation, Dr. Sanchez indicated malingering was a possibility and needed to be "ruled out" "because there is a potential for sizeable external gain here and because there are multiple lines of evidence of poor effort, both in my data and in Dr. Kucera-Thompson's data . . . ." (AR at p. 618).

In May 2012, Plaintiff underwent a psychiatric examination at the request of L & I.  During the examination, Plaintiff told Richard L. Schneider, M.D., that while the vertigo comes and goes, he still had headaches and light sensitivity.  (AR at p. 681).  According to Dr. Schneider:

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 10**

> The variable effort demonstrated on Dr. Sanchez's neuro-psychological testing could well have been a function of the situation that he was in, with a flight to catch and rushing answers, combined with variable performance that his mild cognitive disorder could well have produced.  That is, I believe that Dr. Kucera Thompson's neuropsychological testing probably more accurately reflects his actual functioning.
>
> As my opinion has been solicited as almost a referee status, I would suggest that I tend to agree with the previous psychiatric examiner[2] that posttraumatic stress disorder is not the best diagnosis, . . . rather cognitive disorder secondary to head injury is a more proper diagnosis.
>
> I would recommend the cognitive disorder, and do not think a rating is possible at this point.
>
> He is not capable of gainful employment until some cognitive benefits are obtained.

(AR at p. 683).

In September 2012, Plaintiff underwent a "battery of neuropsychological tests" administered by Philip G. Barnard, Ph.D..  Dr. Barnard wrote:

> Mr. Noel is reporting significant sequelae to his injuries. He is reporting problems with memory, daily head pain, vertigo, restricted range of motion in his neck, and depression.  Mr. Noel continues to have his CDL license.
>
> Mr. Noel was cleared to return to work by Labor and Industries. After discussing that possibility with his former employer, however, they both agree he would not be able to return to his prior type of employment as a result of his head pain and vertigo.  Mr. Noel has worked sporadically on a part time basis since his injuries. He has driven a truck hauling manure.  He has accomplished part time mechanical work.  His frequency of having to call in "sick" because of head pain, however, has been excessive.

(AR at p. 631).  Based on his test results, Dr. Barnard thought it "not probable that Mr. Noel would be capable of eight hour gainful employment in a competitive job market on a full time basis during any 12 month period of time."  (AR at p. 631).

In August 2013, L & I asked Dr. Rodenberger to conduct another psychiatric evaluation.  "Physically," the Plaintiff expressed frustration with continuing vertigo

---

[2] Presumably, Dr. Rodenberger.

**ORDER GRANTING PLAINTIFF'S**

**MOTION FOR SUMMARY JUDGMENT- 11**

and migraines, and "cognitively," he reported difficulty concentrating and focusing. (AR at p. 708). Plaintiff indicated he had been started on metoprolol for his migraines. (AR at p. 709). Dr. Rodenberger noted that although Plaintiff had undergone three previous neuropsychological evaluations and two previous psychiatric evaluations, he had not been entered into any kind of treatment program, be it cognitive, rehabilitative or psychiatric. (AR at p. 709). Taking the Plaintiff's symptoms at "face value," Dr. Rodenberger believed that Plaintiff "clearly qualifies for cognitive disorder, NOS[3] (traumatic brain injury) with physical symptoms that include vertigo, headaches, and loss of sexual desire; cognitive symptoms including difficulty concentrating, forgetfulness, memory impairment, and emotional symptoms including nightmares, fluctuations of mood, personality change, social isolation and avoidant behavior." (AR at p. 713). Dr. Rodenberger also thought that taken at "face value," Plaintiff's symptoms qualified him for Post-Traumatic Stress Disorder. (AR at p. 713).

Furthermore, as part of his evaluation, Dr. Rodenberger responded to the suggestion of Dr. Sanchez for a need to rule out malingering:

> In the addendum through my previous evaluation, I allowed that, whereas I did not feel that this claimant was malingering, he might suffer from some kind of somatoform disorder, specifically a conversion disorder, where unconsciously he is manifesting cognitive and emotional symptoms that are not part of a true brain disordered condition, but rather an unconscious conversion of psychological factors manifesting themselves as a cognitive disorder, and as a Post-Traumatic Stress Disorder.

> Given that there was no evidence of any psychiatric impairment prior to the work injury, and given that there is no clearcut evidence that he is malingering, I believe that he must be given the benefit of the doubt, in that, the psychiatric conditions identified above be considered as directly and causally related to the work injury of October 6, 2010.

(AR at p. 713).

---

[3] Not Otherwise Specified.

**ORDER GRANTING PLAINTIFF'S**

**MOTION FOR SUMMARY JUDGMENT- 12**

1   Dr. Rodenberger opined that Plaintiff was not capable of any employment until
2   provided with treatment recommended by him.  (AR at p. 714).

3   On October 15, 2013, ARNP Cowin completed a form concerning Plaintiff's
4   application for social security disability benefits (presumably provided to her by
5   Plaintiff's counsel).  Among the diagnoses listed by Cowin was "migraine type
6   headache." (AR at p. 657).  Cowin indicated that Plaintiff needed to lie down one to
7   two hours a day.  She further indicated that work on a regular and continuous basis
8   would increase the Plaintiff's headache and it was more probable than not that he
9   would miss, on average, four or more days of work per month, explaining that
10  because of migraines, Plaintiff needed "to be down in [a] dark room." (AR at p. 658).
11  Cowin opined that Plaintiff had the exertional capacity to perform sedentary work.
12  (AR at p. 658).  She also opined that these limitations had existed since October 6,
13  2010, the date of Plaintiff's accident.  (AR at p. 659).

14  In a chart note generated on or about the same date, Cowin indicated Plaintiff's
15  "employability" status was "modified duty," that there were no restrictions on
16  Plaintiff's ability to sit, and that he could stand/walk three to six hours a day.  (AR
17  at pp. 660-61).

18  In November 2013, ARNP Cowin agreed Plaintiff could "perform the **physical**
19  activities described in the job analysis and can return to work on 11-19-2013," but
20  added that he "may have cognitive issues- will have headaches that are disabling at
21  times." (AR at p. 822)(emphasis added).  ARNP Cowin reiterated this in a separate
22  note from November 2013: "He can do some of the clerical stuff on a physical level,
23  but may have cognitive issues that limit him as well as dissabling (sic) headaches that
24  will require time off." (AR at p. 841).

25  It is settled law in the Ninth Circuit that in a disability proceeding, the opinion
26  of a licensed treating or examining physician or psychologist is given special weight
27  because of his/her familiarity with the claimant and his/her condition.  If the treating

28
**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 13**

or examining physician's or psychologist's opinion is not contradicted, it can be rejected only for clear and convincing reasons. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject the opinion if specific, legitimate reasons that are supported by substantial evidence are given. *Id*. "[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Nurse practitioners, physicians' assistants, and therapists (physical and mental health) are not "acceptable medical sources" for the purpose of establishing if a claimant has a medically determinable impairment. 20 C.F.R. §§404.1513(a) and 416.913(a). Their opinions are, however, relevant to show the severity of an impairment and how it affects a claimant's ability to work. 20 C.F.R. §§404.1513(d) and 416.913(d). An ALJ can reject opinions from these "other source[s]" by providing "germane" reasons for doing so. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010).

In his decision, the ALJ emphasized the findings of Dr. Sanchez regarding symptom magnification and poor effort on certain neuropsychological tests. (AR at p. 34). The court concludes the ALJ did not offer "legitimate" reasons for discounting the opinions of the other examining physicians who found Plaintiff credible in his complaints.

Dr. Thompson offered a very equivocal opinion regarding the import of the one test failed by Plaintiff during her (Dr. Thompson's) evaluation. Although Plaintiff engaged in some symptom magnification behaviors during the evaluation, his test results were "consistent with the known facts of the mechanism of injury" and Dr. Thompson believed he had genuine cognitive and physical limitations. Dr. Schneider offered an explanation for the "variable effort" put forth during Dr.

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 14**

1   Sanchez's testing and concluded Plaintiff was not capable of gainful employment
2   until some cognitive benefits were obtained. Dr. Rodenberger opined that any
3   symptom magnification could be attributable to a somatoform disorder and he too
4   opined that Plaintiff could not engage in any gainful employment until some
5   cognitive benefits were obtained through treatment.  As Plaintiff testified during the
6   hearing, and as reflected by the medical record, Plaintiff had not received any
7   treatment through the date of the hearing.

8        What is also reflected by the medical record is that Plaintiff has consistently
9   reported to virtually every medical provider who has examined him that he has
10  suffered from migraine headaches since his injury, No medical provider, including
11  Dr. Sanchez, has disputed that this is a bona fide symptom of a closed head injury.
12  It is unclear if Plaintiff reported to Dr. Sanchez that he suffered from migraine
13  headaches. She apparently did not say anything about migraine headaches.  It appears
14  she spoke only of Plaintiff's cognitive abilities which, although those may be
15  impacted by migraine headaches, are not the same thing.  See, e.g., Gil-Gouveia R,
16  Oliveira A, Pavao Martins I. Cognitive Dysfunction during migraine attacks: A study
17  on migraine without aura. Cephalalgia. 2015; 35(8):662-674.

18       In his decision, the ALJ discounted the opinion of Dr. Schneider because he
19  "did not explain the basis for his opinion." He discounted the opinion of Dr.
20  Rodenberger because "there was no corroborating testing, only a brief mental status
21  exam." (AR at p. 37).  The ALJ did not specify why he thought Dr. Schneider "did
22  not explain the basis for his testing," and as to both Dr. Schneider and Dr.
23  Rodenberger, it is apparent they engaged in a thorough and extensive review of
24  previous test results from other examining physicians and considered those in
25  conjunction with their own mental status examinations in arriving at their
26  conclusions.  The ALJ wrote that Dr. Barnard did not explain his opinion (AR at p.
27  37), but a review of his report fails to reveal how this so.  He administered a "battery

28

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 15**

of neuropsychological tests" and "several supplementary tests" in arriving at his conclusions.

The ALJ noted that Dr. Schneider assigned the Plaintiff a Global Assessment of Functioning (GAF) score of 66, while Dr. Barnard gave a GAF score of 60. (AR at p. 37). The GAF is a 100-point tool rating overall psychological, social and occupational functioning. Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32-34 (4th ed. 2000)(DSM-IV-TR). While it is true that a 66 indicates only "mild" symptoms and a 60 indicates "moderate" symptoms, GAFs measure functioning at the particular time they are given, as is evident from the scores assigned by Drs. Schneider and Barnard (AR at p. 683 and p. 631), and by Dr. Rodenberger (AR at p. 690). Accordingly, unless these GAFs were assessed at the time Plaintiff was experiencing a migraine headache, and there is no indication they were, they do not contradict the doctors' opinions about Plaintiff's capability for gainful employment, nor do they diminish Plaintiff's credibility. Furthermore, GAF scores are typically assessed in controlled, clinical settings that may differ from work environments in important respects, *Garrison v. Colvin*, 759 F.3d 995, 1023 at n. 4 (9th Cir. 2014), and therefore, do not constitute an isolated measure of the ability to perform work.

According to the ALJ, ARNP Cowin's October 2013 opinion that Plaintiff could stand/walk up to 6 hours is "far less restrictive" than the opinion she gave "a week earlier" that Plaintiff was limited to sedentary work, would miss four or more work days monthly, and that he needed to lie down one to two hours a day. (AR at p. 36). These opinions are not inconsistent. Cowin's opinion about Plaintiff needing to lie down one to two hours a day and missing on average four or more work days a month relates to Plaintiff's migraine headaches, not his exertional capacity. Furthermore, opining that Plaintiff could stand/walk three to six hours a day is not necessarily inconsistent with "sedentary" work which, although it involves primarily

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 16**

1   sitting, also often requires a certain amount of standing and walking in carrying out

2   job duties.  20 C.F.R. §§20 C.F.R. 404.1567(a) and 416.967(a).  Therefore, the ALJ

3   did not offer "germane" reasons for rejecting ARNP Cowin's opinions.

4

5   **CREDIBILITY**

6           Where, as here, the Plaintiff has produced objective medical evidence of an

7   underlying impairment that could reasonably give rise to some degree of the

8   symptoms alleged, and there is no affirmative evidence of malingering, the ALJ's

9   reasons for rejecting the Plaintiff's testimony must be clear and convincing.  *Burrell*

10  *v. Colvin,* 775 F.3d 1133, 1137 (9th Cir. 2014); *Garrison v. Colvin*, 759 F.3d at 1014.

11  "In assessing the claimant's credibility, the ALJ may use ordinary techniques of

12  credibility evaluation, such as considering the claimant's reputation for truthfulness

13  and any inconsistent statements in [her] testimony." *Tonapeytan v. Halter*, 242 F.3d

14  1144, 1148 (9th Cir. 2001).  See also *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th

15  Cir.2002)(following factors may be considered:  1) claimant's reputation for

16  truthfulness; 2) inconsistencies in the claimant's testimony or between his testimony

17  and his conduct; 3) claimant's daily living activities; 4) claimant's work record; and

18  5) testimony from physicians or third parties concerning the nature, severity, and

19  effect of claimant's condition).

20          While there is a suggestion in the record of malingering on Plaintiff's part,

21  there certainly is no "affirmative evidence" of malingering, and the ALJ did not find

22  "affirmative evidence" of malingering to excuse him from offering "clear and

23  convincing" reasons for discounting Plaintiff's credibility.   What Plaintiff testified

24  to at his October 23, 2013 hearing regarding his limitations, in particular those arising

25  from episodic migraine headaches, is consistent with what Plaintiff told virtually

26  every examining medical provider during the previous three years.  Plaintiff's

27  complaints about migraine headaches and their effect upon him is not inconsistent

28

**ORDER GRANTING PLAINTIFF'S**

**MOTION FOR SUMMARY JUDGMENT- 17**

with the "longitudinal" medical record and provides no basis for discounting his credibility.

The other reasons offered by the ALJ for discounting Plaintiff's credibility are not "convincing."[1]  The ALJ found that Plaintiff's request for medical clearance in conjunction with his CDL raised a credibility concern and that his work activity after October 6, 2010 cast doubt on the extent to which his symptoms affected him.  As the Plaintiff's hearing testimony reflects, and as corroborated by the medical record, Plaintiff obtained a CDL as part of what ultimately turned out to be a brief and unsuccessful attempt at work.  As recounted in the clinic note from Nurse Cowin, Plaintiff had a job offer from family or friend of family to drive a truck to haul manure to the hop fields, would drive only during the day, and would not be required to do much loading and unloading.  And if Plaintiff did not feel well on a particular day to come in to work, that would be okay with the employer.  (AR at p. 636).  Plaintiff testified he did this job for two hours and realized he could do it no more.  (AR at p. 77).  He obviously told this to Dr. Barnard who indicated in his report that Plaintiff had "worked sporadically on a part time basis since his injuries," including driving a truck hauling manure and doing some part-time mechanical work, but "[h]is frequency of having to call in "sick" because of head pain, however, [was] excessive."  (AR at p. 631).[2]

---

[1]  The Commissioner concedes it was improper for the ALJ to rely on Plaintiff's receipt of unemployment benefits to discount his credibility.  The Commissioner acknowledges the record does not clearly establish whether Plaintiff held himself out as available for full-time work in order to receive unemployment benefits.  (ECF No. 17 at pp. 9-10).

[2]  The court need not address whether Social Security Ruling (SSR) 16-3p, 2016 WL 1119029, effective March 16, 2016, has any application to this case.

**ORDER GRANTING PLAINTIFF'S**

**MOTION FOR SUMMARY JUDGMENT- 18**

**REMAND**

Social security cases are subject to the ordinary remand rule which is that when "the record before the agency does not support the agency action, . . . the agency has not considered all the relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Treichler v. Commissioner of Social Security Administration*, 775 F.3d 1090, 1099 (9th Cir. 2014), quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598 (1985).

In "rare circumstances," the court may reverse and remand for an immediate award of benefits instead of for additional proceedings. *Treichler*, 775 F.3d at 1099, citing 42 U.S.C. §405(g). Three elements must be satisfied in order to justify such a remand. The first element is whether the "ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Id.* at 1100, quoting *Garrison*, 759 F.3d at 1020. If the ALJ has so erred, the second element is whether there are "outstanding issues that must be resolved before a determination of disability can be made," and whether further administrative proceedings would be useful. *Id*. at 1101, quoting *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004). "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Id*. Finally, if it is concluded that no outstanding issues remain and further proceedings would not be useful, the court may find the relevant testimony credible as a matter of law and then determine whether the record, taken as a whole, leaves "not the slightest uncertainty as to the outcome of [the] proceedings." *Id*., quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969). Where all three elements are satisfied-ALJ has failed to provide legally sufficient reasons for rejecting evidence, there are no outstanding issues that must be resolved, and there is no question the claimant is

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 19**

1  disabled- the court has discretion to depart from the ordinary remand rule and remand

2  for an immediate award of benefits. *Id*. But even when those "rare circumstances"

3  exist, "[t]he decision whether to remand a case for additional evidence or simply to

4  award benefits is in [the court's] discretion."  *Id*. at 1102, quoting *Swenson v.*

5  *Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989).

6     Here, the three elements for an award of immediate benefits are satisfied.  The

7  ALJ failed to provide legally sufficient reasons for rejecting evidence (medical

8  opinion and claimant testimony); no outstanding issues remain to be resolved before

9  a determination of disability can be made; further administrative proceedings would

10 not be useful; and the record, taken as a whole, leaves not the slightest uncertainty as

11 to the outcome of the proceedings.  At the November 1, 2013 hearing, Plaintiff's

12 counsel asked the VE the ramifications of an individual needing to lie down during

13 the day for 15 to 30 minutes at a time.  The VE responded that employers do not

14 tolerate unscheduled breaks like this.  (AR at pp. 128-29). The VE also testified it was

15 her opinion that employers would tolerate, on average, one missed day per month.

16 (AR at p. 123). The Plaintiff is credible regarding his suffering of migraine headaches

17 and the record bears out that because of them, he needs to lie down for one to two

18 hours a day and would miss, on average, four or more workdays per month.

19 Accordingly, the Plaintiff cannot perform substantial gainful activity and is disabled.

20

21                                **CONCLUSION**

22     Plaintiff's Motion For Summary Judgment (ECF No. 15) is **GRANTED** and

23 Defendant's Motion For Summary Judgment (ECF No. 17) is **DENIED**.  The

24 Commissioner's decision is **REVERSED**.  Pursuant to sentence four of 42 U.S.C.

25 §405(g) and § 1383(c)(3), this matter is **REMANDED** to the Commissioner for an

26 immediate award of disability benefits based on a disability onset date of October 6,

27 2010.  An application for attorney fees may be filed by separate motion.

28

**ORDER GRANTING PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT- 20**

**IT IS SO ORDERED.**    The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel of record.

**DATED** this ___25th___ day of January, 2017.

*s/Lonny R. Suko*

_____
LONNY R. SUKO
Senior United States District Judge

**ORDER GRANTING PLAINTIFF'S**

**MOTION FOR SUMMARY JUDGMENT- 21**